IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Plaintiff:**<br>MILANA BACHAYEV, an Individual<br><br>v.<br><br>**Defendant:**<br>AIKEN REGIONAL MEDICAL CENTERS, LLC, a South Carolina limited liability company; and KHALID ABUSAADA, an individual. | **COURT USE ONLY**<br><br><br>**CASE NO.** |
| **COMPLAINT WITH JURY DEMAND** | |

COMES NOW, Plaintiff, Milana Bachayev ("**Plaintiff**" or "**Dr. Bachayev**"), by and through her attorneys, as set forth above, states, alleges, and avers as follows:



## PARTIES

1.  Plaintiff is an individual residing at 1493 S. Kenton St., Aurora, CO 80012, and Plaintiff is a citizen of the state of Colorado.

2.  Defendant Aiken Regional Medical Centers, LLC ("**Defendant Aiken**") is a South Carolina limited liability company, upon information and belief, with its principal offices located at 302 University Parkway, Aiken, SC 29801.

3.  Defendant Khalid Abusaada ("**Defendant Abusaada**") is an individual that, upon information and belief, resides in Aiken, SC 29801. Defendant Abusaada is a citizen of the state of South Carolina.

## JURISDICTION AND VENUE

4.  The Court is vested with jurisdiction over Defendants because Defendants reside in the state of South Carolina.

{00032642 / 4}

1

5. The Court is vested with subject matter jurisdiction because (1) the lawsuit is between citizens of different states and (2) the amount in controversy exceeds $75,000.

6. The venue of this action is proper in this Court because actions and inactions pertaining to the claims identified in this Complaint took place in Aiken County, South Carolina.

7. Plaintiff filed a Charge of Discrimination against Defendant Aiken with the U.S. Equal Employment Opportunity Commission (the "**EEOC**"), and the EEOC issued a Notice of Right to Sue to Plaintiff.

## FACTUAL ALLEGATIONS

8. At all times during the time frames referenced in this Complaint, Plaintiff was an employee of and resident in Defendant Aiken's Internal Medicine Program (the "**Program**").

9. Plaintiff is a female and an Orthodox Jew.

10. Defendant Aiken is a healthcare provider that owns and operates a 273 licensed-bed acute care hospital facility in Aiken, South Carolina that offers a comprehensive range of specialties and services.

11. Defendant Aiken is accredited by The Joint Commission and licensed by the State of South Carolina.

12. Defendant Aiken is operated by a subsidiary of Universal Health Services, Inc. ("**UHS**"), a King of Prussia, PA-based company, one of the nation's largest providers of hospital and healthcare services.

13. At all times during the time frames referenced in this Complaint, Defendant Abusaada was an employee of Defendant Aiken, the Director of the Program and Plaintiff's supervisor.

14. Plaintiff entered the Program as a resident on or about June 19, 2023.

{00032642 / 4}

15. As the Director of the Program and Plaintiff's supervisor, Defendant Abusaada occupied a position of trust and authority over Plaintiff.

16. In July of 2023, Defendant Abusaada utilized his position of trust and authority over Plaintiff to unduly pressure Plaintiff into engaging in an inappropriate relationship with Defendant Abusaada.

17. Plaintiff was isolated from her family located in Denver, Colorado, and Plaintiff deeply missed her family.

18. Defendant Abusaada had knowledge of such isolation and the fact that Plaintiff deeply missed her family.

19. Defendant Abusaada had knowledge that Plaintiff was an Orthodox Jew.

20. As set forth below, Defendant Abusaada launched a systematic attack on Plaintiff's physical, mental and spiritual well-being due to such religious affiliation, practices and beliefs.

21. Defendant Abusaada preyed on Plaintiff's vulnerability, and Defendant Abusaada required Plaintiff to share intimate details about her marriage with Defendant Abusaada, including, without limitation, intimate details about her sexual history and/or activities.

22. Defendant Abusaada repeatedly made sexual comments to Plaintiff, including, without limitation, stating that Plaintiff's husband was visiting Plaintiff from Denver for a "booty call."

23. In August of 2023, Defendant Abusaada touched Plaintiff's waist with his hand(s).

24. On September 6, 2023, Defendant Abusaada placed his hand around my Plaintiff's waist, and Plaintiff requested that Defendant Abusaada refrain from touching Plaintiff.

25. Plaintiff reminded Defendant Abusaada that she is married and an Orthodox Jew and that it was entirely inappropriate for Defendant Abusaada to physically touch Plaintiff.

26. Defendant Abusaada's sexual conduct towards Plaintiff was unwelcomed.

{00032642 / 4}

27. In October of 2023, Defendant Abusaada made a number of anti-sematic remarks to Plaintiff.

28. Defendant Abusaada said "what is so special about you, Jew?"

29. Defendant Abusaada informed Plaintiff that he was raised to hate Jews and Israel, including Plaintiff.

30. Defendant Abusaada stated to Plaintiff that he prayed for Iran to attack Israel.

31. Defendant Abusaada said that "Jews" only have their "Jewish identity" and "no one wishes to help a Jew."

32. Defendant Abusaada referred to Plaintiff's religious practices as "stupid" on a multitude of occasions.

33. Defendant Abusaada unlawfully targeted Plaintiff due to her religious affiliation, practices and beliefs.

34. In October of 2023, Defendant Abusaada constituted Plaintiff's treating physician and informally diagnosed Plaintiff with Attention-Deficit/Hyperactivity Disorder ("**ADHD**").

35. Thereafter, Plaintiff was formally diagnosed with ADHD, which is not transitory nor minor.

36. Defendant Abusaada had knowledge of such diagnosis.

37. Plaintiff made a request for reasonable accommodations to Defendant Abusaada, including, without limitation, access to a separate room to study and complete notes.

38. Defendant Abusaada rejected Plaintiff's request for reasonable accommodations with no explanation and/or counterproposal for reasonable accommodations.

39. Thereafter, Defendant Aiken and/or Defendant Abusaada caused informal remediation to be implemented against Plaintiff (the "**Unlawful and Informal Remediation**").

40. The Unlawful and Informal Remediation constitutes an act of retaliation by Defendant Aiken and/or Defendant Abusaada against Plaintiff for rejecting Defendant Abusaada's unwelcomed sexual conduct and discriminatory practices against Plaintiff.

41. In addition, the Unlawful and Informal Remediation is part of a systematic efforts by Defendant Aiken and/or Defendant Abusaada to isolate Plaintiff, take advantage of Plaintiff's vulnerability and attack Plaintiff's physical, mental and spiritual well-being.

42. The Unlawful and Informal Remediation involved private and weekly meetings with Defendant Abusaada in his private office with the door closed.

43. In such meetings, Defendant Abusaada, as the Director of the Program and Plaintiff's supervisor, required Plaintiff to discuss religion, politics and intimate details about marital relationships with Defendant Abusaada.

44. After the informal remediation process concluded, Defendant Aiken and/or Defendant Abusaada caused formal remediation to be implemented against Plaintiff (the **"Unlawful and Formal Remediation"**).

45. The Unlawful and Formal Remediation constitutes an act of retaliation by Defendant Aiken and/or Defendant Abusaada against Plaintiff for rejecting Defendant Abusaada's unwelcomed sexual conduct and discriminatory practices against Plaintiff.

46. In addition, the Unlawful and Formal Remediation is part of a systematic efforts by Defendant Aiken and/or Defendant Abusaada to isolate Plaintiff, take advantage of Plaintiff's vulnerability and attack Plaintiff's physical, mental and spiritual well-being.

47. Similar to the informal remediation process, this involved private and bi-weekly meetings with Defendant Abusaada in his private office with the door closed.

48. In such meetings, Defendant Abusaada would require Plaintiff to discuss religion, politics and intimate details about marital relationships with Defendant Abusaada, including,

{00032642 / 4}

5

without limitation, intimate details about Plaintiff's sexual history, Plaintiff's sexual activities and/or Defendant Abusaada's ex-wife.

49. On September 19, 2024, Plaintiff was treated at Defendant Aiken's hospital for low blood pressure, low hemoglobin and dizziness at the direction of Dr. Chaudry, an employee of Defendant Aiken.

50. During such treatment, Plaintiff was assigned an alias name by Defendant Aiken.

51. During such treatment, Plaintiff received an invasive and painful procedure (*i.e.*, a rectal examination and fecal occult blood test (FOBT)).

52. Such invasive procedure was performed by Dr. White, an employee of Defendant Aiken.

53. Dr. White has very large hands which contributed to Plaintiff's pain and discomfort.

54. Unfortunately, ARMC committed malpractice and mislabeled Plaintiff's FOBT specimen (the "**Malpractice Incident**"). Thereafter, a nurse informed Plaintiff that the FOBT must be repeated, and Dr. White entered the room to repeat the FOBT.

55. Plaintiff immediately objected to such invasive procedure being repeated on Plaintiff.

56. Dr. White informed Plaintiff that she was welcome to contact the lab to resolve the Malpractice Incident in an effort to avoid the necessity of repeating the FOBT.

57. The nurse handed Plaintiff the ASCOM phone, and Plaintiff, pursuant to Dr. White's direction, contacted the lab to inquire as to whether or not Plaintiff's FOBT specimen could be salvaged.

58. During the call, Plaintiff identified herself as Dr. Bachayev and provided the lab technician with the alias name assigned to Plaintiff in connection with Plaintiff's treatment and utilized in connection with the FOBT specimen.

59. Plaintiff never identified herself as the treating physician, and Plaintiff never made any inaccurate statements and/or misrepresentations to the lab technician.

60. Fortunately, the lab technician confirmed that Plaintiff's FOBT specimen could be salvaged despite the fact that Plaintiff's FOBT specimen was mislabeled.

61. Plaintiff thanked the lab technician, and the lab technician ran the test.

62. On October 8, 2024, Defendant Aiken and/or Defendant Abusaada caused probationary measures to be taken against Plaintiff, including, without limitation, in connection with the Malpractice Incident and incidents misrepresented and/or fabricated by Defendant Aiken and/or Defendant Abusaada against Plaintiff (the "**Unlawful Probationary Measures**").

63. The Unlawful Probationary Measures constitutes an act of retaliation by Defendant Aiken and/or Defendant Abusaada against Plaintiff for rejecting and/or reporting Defendant Abusaada's unwelcomed sexual conduct and discriminatory practices against Plaintiff.

64. In addition, the Unlawful Probationary Measures are part of a systematic efforts by Defendant Aiken and/or Defendant Abusaada to isolate Plaintiff, take advantage of Plaintiff's vulnerability and attack Plaintiff's physical, mental and spiritual well-being.

65. On October 11, 2024, Plaintiff appealed the Unlawful Probationary Measures and formally notified Defendant Aiken of Defendant Abusaada's misconduct towards Plaintiff, including, without limitation, unwelcomed sexual conduct, discriminatory practices and acts of retaliation against Plaintiff.

66. Upon information and belief, Defendant Aiken and/or Defendant Abusaada failed to consider and/or process such appeal in accordance with Defendant Aiken's rules, policies and/or procedures.

67. Thereafter, Defendant Aiken and/or Defendant Abusaada unduly pressured Plaintiff to resign from the Program and "voluntarily" terminate her employment with Defendant Aiken.

68. Despite such pressure, Plaintiff refused to resign from the Program.

69. On November 8, 2024, Defendant Aiken and/or Defendant Abusaada caused Plaintiff to be immediately suspended from the Program (the "**Unlawful Suspension**").

70. The Unlawful Suspension constitutes an act of retaliation by Defendant Aiken and/or Defendant Abusaada against Plaintiff for rejecting and/or reporting Defendant Abusaada's unwelcomed sexual conduct and discriminatory practices against Plaintiff.

71. In addition, the Unlawful Suspension is part of systematic efforts by Defendant Aiken and/or Defendant Abusaada to isolate Plaintiff, take advantage of Plaintiff's vulnerability and attack Plaintiff's physical, mental and spiritual well-being.

72. On November 15, 2024, Plaintiff appealed the Unlawful Suspension.

73. Upon information and belief, Defendant Aiken and/or Defendant Abusaada failed to consider and/or process such appeal in accordance with Defendant's rules, policies and/or procedures.

74. On December 27, 2024, Defendant Aiken and/or Defendant Abusaada caused Plaintiff to be dismissed from the Program (the "**Unlawful Termination**").

75. The Unlawful Termination constitutes an act of retaliation by Defendant Aiken and/or Defendant Abusaada against Plaintiff for rejecting and/or reporting Defendant Abusaada's unwelcomed sexual conduct and discriminatory practices against Plaintiff.

76. In addition, the Unlawful Termination is part of a systematic efforts by Defendant Aiken and/or Defendant Abusaada to isolate Plaintiff, take advantage of Plaintiff's vulnerability and attack Plaintiff's physical, mental and spiritual well-being.

77. Defendant Aiken and Defendant Abusaada subjected Plaintiff to a hostile work environment based upon her sex, religion and/or disability.

## FIRST CLAIM FOR RELIEF

### (Violation of South Carolina Human Affairs Law)

### (Against Defendant Aiken and Defendant Abusaada)

78. Plaintiff incorporates and realleges all previously alleged Paragraphs set forth above as if fully set forth herein.

79. Defendant Aiken and Defendant Abusaada discriminated against Plaintiff based upon her sex, religion and disability.

80. Defendant Aiken and Defendant Abusaada retaliated against Plaintiff for rejecting and/or reporting Defendant Aiken's and/or Defendant Abusaada's unwelcomed sexual conduct towards Plaintiff and discriminatory practices against Plaintiff, including, without limitation, as follows: (i) by attacking Plaintiff's physical, mental and spiritual well-being; (ii) by causing the Unlawful and Information Remediation to occur; (iii) by causing the Unlawful and Formal Remediation to occur; (iv) by causing the Unlawful Probationary Measures to occur; (v) by pressuring Plaintiff to resign from the Program; (vi) by causing the Unlawful Suspension to occur; and/or (vii) by causing the Unlawful Termination to occur.

81. Plaintiff incurred damages as a result of Defendant Aiken's and Defendant Abusaada's actions in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Title VII of the Civil Rights Act)

### (Against Defendant Aiken and Defendant Abusaada)

82. Plaintiff incorporates and realleges all previously alleged Paragraphs set forth above as if fully set forth herein.

{00032642 / 4}

83. Defendant Aiken and Defendant Abusaada discriminated against Plaintiff based upon her sex and religion.

84. Defendant Aiken and Defendant Abusaada retaliated against Plaintiff for rejecting and/or reporting Defendant Aiken's and/or Defendant Abusaada's unwelcomed sexual conduct towards Plaintiff and discriminatory practices against Plaintiff, including, without limitation, as follows: (i) by attacking Plaintiff's physical, mental and spiritual well-being; (ii) by causing the Unlawful and Information Remediation to occur; (iii) by causing the Unlawful and Formal Remediation to occur; (iv) by causing the Unlawful Probationary Measures to occur; (v) by pressuring Plaintiff to resign from the Program; (vi) by causing the Unlawful Suspension to occur; and/or (vii) by causing the Unlawful Termination to occur.

85. Plaintiff incurred damages as a result of Defendant Aiken's and Defendant Abusaada's actions in an amount to be proven at trial.

86.

### THIRD CLAIM FOR RELIEF

### (American with Disabilities Act)

### (Against Defendant Aiken and Defendant Abusaada)

87. Plaintiff incorporates and realleges all previously alleged Paragraphs set forth above as if fully set forth herein.

88. Defendant Aiken and Defendant Abusaada discriminated against Plaintiff based upon her disability (*i.e.*, ADHD).

89. Defendant Aiken and Defendant Abusaada treated Plaintiff unfavorably based upon her disability.

90. Defendant Aiken and Defendant Abusaada failed to provide Plaintiff with any reasonable accommodations in connection with her disability.

{00032642 / 4}

91. The reasonable accommodations requested by Plaintiff would not cause significant difficulty or expense to Defendant Aiken nor Defendant Abusaada.

92. Defendant Aiken and/or Defendant Abusaada targeted Plaintiff after her request for reasonable accommodations, including, without limitation, as follows: (i) by attacking Plaintiff's physical, mental and spiritual well-being; (ii) by causing the Unlawful and Information Remediation to occur; (iii) by causing the Unlawful and Formal Remediation to occur; (iv) by causing the Unlawful Probationary Measures to occur; (v) by pressuring Plaintiff to resign from the Program; (vi) causing the Unlawful Suspension to occur; and/or (vii) by causing the Unlawful Termination to occur.

93. Defendant Aiken and Defendant Abusaada retaliated against Plaintiff for rejecting and/or reporting Defendant Aiken's and/or Defendant Abusaada's discriminatory practices against Plaintiff, including, without limitation, as follows: (i) by attacking Plaintiff's physical, mental and spiritual well-being; (ii) by causing the Unlawful and Information Remediation to occur; (iii) by causing the Unlawful and Formal Remediation to occur; (iv) by causing the Unlawful Probationary Measures to occur; (v) by pressuring Plaintiff to resign from the Program; (vi) by causing the Unlawful Suspension to occur; and/or (vii) by causing the Unlawful Termination to occur.

94. Plaintiff incurred damages as a result of Defendant Aiken's and Defendant Abusaada's actions in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct)

### (Against Defendant Aiken and Defendant Abusaada)

95. Plaintiff incorporates and realleges all previously alleged Paragraphs set forth above as if fully set forth herein.

{00032642 / 4}

96. Defendant Aiken and Defendant Abusaada engaged in extreme and outrageous conduct towards Plaintiff while Plaintiff was an employee of Defendant Aiken.

97. Defendant Aiken and Defendant Abusaada did so recklessly or with the intent of causing Plaintiff severe emotional distress.

98. Defendant Aiken's and Defendant Abusaada's conduct caused Plaintiff severe emotional distress and/or highly unpleasant mental reactions that are so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it, including, without limitation, nervous shock, insomnia, anxiety, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment and worry.

99. Plaintiff has incurred noneconomic and economic losses as a direct and proximate cause of Defendant Aiken's and Defendant Abusaada's actions in amounts to be proven at trial.

### FIFTH CLAIM FOR RELIEF

### (Tortious Interference with Business Relations)

### (Against Defendant Abusaada)

100. Plaintiff incorporates and realleges all previously alleged Paragraphs set forth above as if fully set forth herein.

101. Plaintiff had contracts with Defendant Aiken in connection with her participation in the Program.

102. Under such contracts, Defendant Aiken was required to educate Plaintiff and prepare Plaintiff to be an internal medicine physician.

103. Defendant Aiken knew or reasonably should have known of such contracts.

104. Defendant Abusaada's words or conduct intentionally caused Defendant Aiken not to perform its contracts with Plaintiff and/or interfered with Defendant Aiken's performance of such contracts.

105. Defendant Abusaada's interference with such contracts was improper.

106. Defendant Abusaada's interference with such contracts caused Plaintiff damages and/or losses to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duties)

### (Against Defendant Abusaada)

107. Plaintiff incorporates and realleges all previously alleged Paragraphs set forth above as if fully set forth herein.

108. Plaintiff placed tremendous trust and confidence in Defendant Abusaada in his capacity as the Director of the Program and in his capacity as her treating physician.

109. Defendant Abusaada invited, accepted or acquiesced in that reposition of trust and confidence.

110. Defendant Abusaada owed a duty of care and a duty of loyalty to Plaintiff.

111. Defendant Abusaada breached his fiduciary duties to Plaintiff, including, without limitation, as follows: (i) by attacking Plaintiff's physical, mental and spiritual well-being; (ii) by causing the Unlawful and Information Remediation to occur; (iii) by causing the Unlawful and Formal Remediation to occur; (iv) by causing the Unlawful Probationary Measures to occur; (v) by pressuring Plaintiff to resign from the Program; (vi) by causing the Unlawful Suspension to occur; and/or (vii) causing the Unlawful Termination to occur.

112. Plaintiff has suffered significant damages as a result of such breach of fiduciary duties in amounts to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (Civil Conspiracy)

### (Against Defendant Aiken and Defendant Abusaada)

113. Plaintiff incorporates and realleges all previously alleged Paragraphs set forth above as if fully set forth herein.

114. Defendant Aiken and Defendant Abusaada agreed to participate in a conspiracy to engage in unlawful acts against Plaintiff.

115. In furtherance of the conspiracy, Defendant Aiken and Defendant Abusaada retaliated against Plaintiff for rejecting and/or reporting Defendant Abusaada's unwelcomed sexual conduct towards Plaintiff and discriminatory practices against Plaintiff, including, without limitation, as follows: (i) by attacking Plaintiff's physical, mental and spiritual well-being; (ii) by causing the Unlawful and Information Remediation to occur; (iii) by causing the Unlawful and Formal Remediation to occur; (iv) by causing the Unlawful Probationary Measures to occur; (v) by pressuring Plaintiff to resign from the Program; (vi) by causing the Unlawful Suspension to occur; and/or (vii) by causing the Unlawful Termination to occur.

116. Plaintiff has suffered significant damages as a result of such civil conspiracy in amounts to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor, granting the following relief against Defendants:

(a) judgment in favor of Plaintiff and an award to Plaintiff of full compensatory and consequential damages against Defendants, in an amount to be determined at trial, factoring in all interest, costs and expenses;

(b) an award of exemplary and/or punitive damages;

{00032642 / 4}

(c)   attorney's fees and expenses of litigation; and

(d)   for such other and further relief deemed necessary and just by this Court.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

Respectfully submitted this 18th day of September 2025.

_____
MILANA BACHAYEV